**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ERIC LEIGH HARRIS,**

        **Plaintiff,**

**-vs-**                                                                     **Case No. 6:14-cv-701-Orl-DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff filed for a period of disability, DIB[1] and SSI benefits on July 29, 2011, alleging an onset of disability on May 26, 2011, due to damaged spine, neck, cord compression at C5-C6, pain

---

[1] Date last insured is December 31, 2014. R. 239.

in shoulders, degenerative disc disease, high blood pressure, depression, asthma, and hand numbness from carpal tunnel syndrome. R. 78, 89, 100-01, 104, 120, 214-25, 249, 284. His application was denied initially and upon reconsideration. R. 124-49. Plaintiff requested a hearing, which was held on August 16, 2013, before Administrative Law Judge Melinda K. Hart (hereinafter referred to as "ALJ"). R. 28-77. In a decision dated August 30, 2013, the ALJ found Plaintiff not disabled as defined under the Act through the date of her decision. R. 8-27. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on February 28, 2014. R. 1-4. Plaintiff filed this action for judicial review on May 5, 2014. Doc. 1.

### B.   Medical History and Findings Summary

Plaintiff was born on October 20, 1964, and was forty-six at the time of the alleged onset date of disability. R. 20. Plaintiff further noted that he had obtained a GED, equaling a 12th grade education. R. 31. Plaintiff has an electrician/journeyman's license since 1993 and worked as a commercial electrician from 1990 to July 2008, when he was laid off. R. 249-50.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of spine damage and spinal cord compression in the cervical spine, degenerative disc disease, high blood pressure, depression and asthma. R. 248. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered degenerative disc disease, hypertension, mild right knee degenerative joint disease, mild bilateral carpal tunnel syndrome, and mild right AC joint degenerative joint disease, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 13-14. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work with a number of exertional and non-exertional restrictions. R. 14. Based upon Plaintiff's RFC, the ALJ determined

that he could not perform past relevant work. R. 20. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as an assembler, electrical accessories I, blade balancer, and egg candler. R. 21. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, from May 26, 2011 through the date of the decision. R. 21.

Plaintiff now asserts three points of error. First, he argues that the ALJ erred by finding he had the RFC to perform light work contrary to his treating physician's opinion and medical evidence in the Record. Second, he claims the ALJ erred by relying on the testimony of the Vocational Expert after posing a hypothetical question that did not adequately reflect the limitations. Third, he argues that the ALJ erred in evaluating his credibility and by improperly applying the pain standard. For the reasons that follow, the decision of the Commissioner is is **REVERSED** and **REMANDED**.

## II.     STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

### A. Plaintiff's RFC, pain, and credibility

Plaintiff argues that the ALJ erred by finding he had the RFC to perform light work contrary to his treating physician's opinion. The Commissioner contends that the ALJ properly discounted Dr. Byrne's opinion and the ALJ's decision is supported by substantial evidence.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

In the ALJ's decision, she found Plaintiff had the RFC to perform light work lifting up to 20 pounds occasionally and up to 10 pounds frequently; standing/walking up to 6 hours and sitting up to 6 hours in an 8-hour workday, with normal breaks; with occasional climbing of ladders, ropes, scaffolds, ramps and stairs, balancing; stooping, kneeling, crouching, and crawling; frequent handling and fingering of objects bilaterally; and avoiding concentrated use of moving machinery and exposure to unprotected heights. R. 14. The ALJ limited Plaintiff to work that is simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work related decisions and routine work place changes, and which do not require nighttime vision. R. 14. The ALJ then found Plaintiff could not perform his past relevant work as an electrician, but could perform other work, and was not disabled. R. 21.

In determining Plaintiff's RFC, the ALJ described the treatment records of Plaintiff's treating physician, Dr. Byrne, as follows:

> In June 2013, James Byrne, D.O., completed a Medical Source Statement on behalf of the claimant. Therein, the doctor opined that the claimant is not able to lift or carry any weight. The claimant is only able to sit, stand, and/or walk for 10 minutes at one time. The claimant requires the use of a cane to ambulate. The claimant can never use to right hand to reach overhead. The claimant can never use the left foot to operate foot controls. The claimant can never climb ladders or scaffolds, stoop, kneel, crouch, or crawl. The claimant can never tolerate exposure to unprotected heights; moving mechanical parts; operating a motor vehicle; humidity and wetness; dust, odors, fumes and pulmonary irritants; extreme cold and heat; and vibrations. The claimant cannot shop and he cannot sort, handle, or use paper/files (Exhibit 10F).
>
> Dr. Byrne also completed a Lumbar Spine Medical Source Statement. Therein, the doctor indicated that the claimant is only able to sit for less than 2 hours and stand/walk for less than 2 hours in an 8-hour workday. The claimant cannot twist. stoop, crouch, squat, or climb. The claimant is incapable of even low stress work, and the claimant is likely to be absent from work more than 4 days per month as a result of his impairment and/or treatment (Exhibit l1F).

R. 19.

The ALJ gave "little weight" to the opinion of Plaintiff's treating physician, Dr. Byrne because she found his opinions were not consistent internally or with the objective medical findings:

> Dr. Byrne's opinions are accorded little weight, as his opinions are internally inconsistent, inconsistent with the objective medical findings, and inconsistent with the claimant's course of treatment. The Medical Source Statement appears to contain inconsistencies, and the doctor's opinion is accordingly rendered less persuasive. For example, the doctor indicated that the claimant's symptoms are not severe enough to interfere with the attention and concentration needed to perform simple work tasks-He indicated that the claimant is likely to be "off task" 0% (Exhibit l lF/4). However, the doctor also opined that the claimant is incapable of even "low stress" work. However, he did not explain the reason for this inconsistency.
>
> In addition, Dr. Byrne's opinions are without support from the other evidence of record. For example, Dr. Byrne indicated that the claimant is unable to lift and carry up to 10 pounds (Exhibit l0F/l); however, at the hearing, the claimant stated that he is able to lift and carry a 12 pack of soda[2]. On Form SSA-3441, the claimant noted he is unable to lift over 50 pounds (Exhibit 9E/l). Dr. Byrne opined that the claimant is unable to walk a city block without rest or severe pain (Exhibit l1F/2); however, the

---

[2]The Court takes judicial notice that a 12 pack of 12 oz. cans of soda weights about 10 pounds in total.

>claimant testified that he walks to the library on a frequent basis. The doctor stated that the claimant must use a cane or other assistive device while engaged in occasional standing/walking; however, on examination, the claimant has had normal gait and station and the claimant is able to heel and toe walk without difficulty or impairment (Exhibit 3F/14 and 5F/3). In addition, treatment notes indicate that the claimant was on a roof in September 2012 (Exhibit 5F/l) and he was in a pool in August 2011 (Exhibit lF/6).

R. 19.

Plaintiff argues the ALJ erred in giving "little weight" to the opinion of Dr. Byrne because, as an initial matter, the handwritten records of Dr. Bryne are illegible due to poor handwriting and it would have been impossible for the ALJ to reach such a conclusion when she could not have deciphered the doctor's illegible records. Doc 20 at 12 (citing *Bishop v. Sullivan*, 900 F.2d 1259, 1262 (8th Cir. 1990)). The Commissioner points out that the ALJ did not find the records to be illegible, and the Commissioner's counsel is able to make out a portion of them, as is the Court, though they are not all that detailed, and Plaintiff testified that Dr. Byrne is his primary care physician (R. 36) and is apparently not a specialist in orthopedics, thus, his notes are not all that illuminating as to Plaintiff's condition, though he has recorded Plaintiff's contemporaneous subjective complaints in one- or two-word phrases. *See, e.g.,* R. 360-70, 386-96.

Plaintiff further argues that even though he testified the "best" he could lift "right now is about a 12-pack of soda," this should not have negated the medical opinion of his treating physician because it is "well founded that participation in everyday activities of short duration, such as housework or fishing, does not disqualify a claimant from disability." Doc. 20 at 13 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997)). He also contends that the ALJ inappropriately concluded he indicated he could lift "up to 50 pounds," since he checked a box that he could *not* lift *over* that amount, but the ALJ's interpretation is not an accurate assumption or representation of the evidence since, in the context of the SSA Disability form (R. 283), he actually noted that he had not been able

-7-

to lift over 50 pounds since 2011, his alleged date of onset. R. 283. The Commissioner contends that the ALJ reasonably concluded that Plaintiff's report that he "can't lift over 50 lbs" was inconsistent with Dr. Byrne's opinion that Plaintiff could never even lift up to 10 pounds based on a plain reading of Plaintiff's statement that he could not lift "over 50 pounds." The SSA form is not a model of clarity, and more importantly, at the hearing, Plaintiff testified to the limit he could lift, which the Court interprets to be approximately 10 pounds.

Plaintiff also argues that the ALJ erred by discounting Dr. Byrne's opinion that the "claimant is unable to walk a city block without rest or severe pain" because Plaintiff had testified that he "walks to the library on a frequent basis." R. 19. Plaintiff points out that the ALJ omitted Plaintiff's testimony that the library is merely eight to ten *houses* away from his home, or a couple of "small town" blocks, from his home. R. 47. The Commissioner argues that the ALJ did not err in relying only on "short-lived activities of daily living" to disqualify Plaintiff from disability benefits but, instead, properly pointed to Plaintiff's admitted abilities for something he did on a frequent basis, which directly contradicted Dr. Byrne's opinion as a reason to accord the opinion less weight than it might otherwise receive. However, the Commissioner concedes that the ALJ noted in the summary of Plaintiff's testimony that the library was a distance of eight to ten *houses* (R. 15), which hardly a long distance; however, the ALJ failed to clarify the short 8-10 houses distance in discounting Dr. Byrne's opinion when she contrasted it by describing Plaintiff's testimony as more open-ended: "he walks to the library on a frequent basis." R. 19.

Plaintiff further argues that the ALJ erred in discounting Dr. Byrne's opinion Plaintiff required a cane because other records showed "on examination, the claimant has had normal gait and station and the claimant is able to heel and two walk without difficulty or impairment" (R. 19), relying on records from a different physician, Dr. Grimes, who was treating Plaintiff for neck and bilateral arm

pain and shoulder pain, and not necessarily addressing his back pain in those records. R. 382, 397. The Commissioner is correct that there is no support in the treatment records prescribing Plaintiff a cane, but Dr. Byrne did state is was "medically necessary" in his opinion and Plaintiff could ambulate without it 100 yards. R. 430. Dr. Byrne cites to the MRIs of Plaintiff's spine in support, but does not give any more detail than that. R. 431-35. The ALJ did not err in finding that there was no prescription or discussion of Plaintiff's need for a cane in the records.

Plaintiff also takes issue with the ALJ's final reason for not giving Dr. Byrne's opinion controlling weight, *i.e.*, that the treatment records noting Plaintiff was "on a roof in September 2012 (Exhibit 5F/1) and he was in a pool in August 2011 (Exhibit 1F/6)," even though Plaintiff specifically testified that he was not on a "roof" (R. 50), and the same medical note also indicated that Plaintiff reported falling "3 to 4 feet" (R. 397), which would clearly be much higher than three to four feet. Dr. Grimes – whose records indicate he dictated the note "using a voice activated dictation system," which "even with editing, may contain grammatical and/or punctuation errors" – noted Plaintiff's report that he had been up on a "roof" and "fell about 3 or 4 feet landing on his feet and states 'I jarred myself up.'" R. 397. This statement conveys that Plaintiff fell and "jarred" something in his right shoulder, however, it is internally inconsistent in the sense that a roof would not be only "3 or 4 feet" from the ground. The ALJ should not have relied on it so heavily to discount Plaintiff's statements, given the other evidence of record and Plaintiff's denial at the hearing.

As far as being in a pool, Plaintiff contends that he admits that he was in a pool at the time of the alleged onset date– in May 2011– and the emergency room records from his neck injury on May 26, 2011 (his alleged onset date) were based on an accident in a swimming pool, leading up to his impaired condition. R. 310. As such, he argues the record does not contradict the opinion of the

-9-

treating physician, but instead support Plaintiff's allegation of his onset of significantly increased neck pain from the injury in the pool when the children "tackled" him. R. 51.

The Commissioner contends the ALJ correctly reasoned: "In addition, treatment notes indicate that the claimant was on a roof in September 2012 (Exhibit 5F/l) and he was in a pool in *August* 2011 (Exhibit lF/6)," a few months *after* the alleged onset date. However, that is clearly incorrect – the medical treatment records that the ALJ and the Commissioner point to for the pool injury are clearly dated *May* 26, 2011 (R. 310), which is Plaintiff's alleged onset date for his disability application.

The Commissioner argues that Plaintiff has failed to rebut the ALJ's finding that Plaintiff had only received conservative treatment, which was inconsistent with Dr. Byrne's opinion, as the ALJ pointed out – Plaintiff "had not undergone any surgical evaluation despite his treating physician's recommendation." R. 17, 19, 371. As Plaintiff testified when the ALJ asked whether Plaintiff had found anyone who would give him a surgical evaluation:

> Under Medicaid, the only person they offered, they said would do . . . the surgical evaluation told me he no longer took Medicaid and that's everybody in this county.

R. 58.

Plaintiff identifies issues concerning the ALJ's assessment of the Record which also impact the ALJ's determination of Plaintiff's subjective complaints of pain and his credibility. In finding Plaintiff's allegations "not entirely credible," (R. 16), the ALJ summarized the evidence as:

> The medical evidence of record does not contain the type of significant clinical and laboratory abnormalities one would expect form an individual totally disabled or unable to perform light work activity. For example, on examination in September 2012, the claimant had full range of motion of the lumbar spine with flexion and extension; and no significant lumbosacral paraspinal spasms was appreciated. Hip rotational testing was negative bilaterally. Motor strength testing in the lower extremities was intact at 5/5 bilaterally. No weakness, myoatrophy or fasciculations were evident. Mechanical signs were negative to 90 degrees in both legs. The claimant was able to heel and toe walk without difficulty or impairment (Exhibit 5F/3).

> Deep tendon reflexes in the upper extremities were intact at the triceps, biceps and brachioradialis at 2+. The Tinel sign was mildly positive at both the median nerves. Ulnar Tinel's was negative bilaterally. Hoffmann's was negative. The sensory exam in the upper extremities was intact to tight touch and pinprick. Graphesthesia was intact in both hands. Stereognosis was appropriate in both hands. Two-point discrimination was intact in both hands and digits. No pronator drift was noted. Deep tendon reflexes in the lower extremities were intact and symmetrical at 2+ at both the patellar and Achilles. Sensory examination of the lower extremities was intact to light touch pinprick and vibratory bilaterally. Rapid alternating hand and finger movements were intact and gait and station were appropriate (Exhibit SF/3 ). It was noted that the claimant "denies applying for disability" (Exhibit 5F/2) and was currently not working. The claimant's date of birth in treatment notes was accurate.

R. 18.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated

reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

The Court finds that, viewing the Record as a whole, the ALJ has failed to accurately summarize or properly weigh the evidence of Plaintiff's spinal issues and symptoms, and has downplayed Plaintiff's symptoms based on either misapplication of clearly incorrect information in the medical records, or inappropriate reliance on certain questionable information in the Record. The ALJ focused on Plaintiff's less severe lumbar/low back pain and "mild" objective findings in the lumbar spine, even though Plaintiff's written submissions to the SSA and his testimony at the hearing very much focused on his cervical spine pain and radiating symptoms, coupled with bilateral carpal tunnel syndrome. For example, although the ALJ included a description of the "severe" and "moderate" multi-level degenerative changes were noted in Plaintiff's 2011 and 2012 MRI's of the *cervical spine*, the ALJ omitted these records which were favorable to Plaintiff in discussing the severity of Plaintiff's symptoms in the context of his credibility:

> Although the record confirms the existence of the claimant's impairments, the record does not establish work preclusive impairments and symptoms for 12 continuous months or more. The claimant's medical complaints have been treated conservatively and the objective medical evidence does not preclude work at a light exertional level as specified in the residual functional capacity above.

R. 17. The ALJ described Plaintiff's treatment records with an emphasis on the "mild" degenerative changes in the *lower* back, while omitting completely (in the credibility discussion) the "severe" results of an x-ray and MRI of Plaintiff's *cervical* spine:

> In May 2011, the claimant presented to Bert Fish Medical Center with complaints of neck pain, right shoulder pain, and low back pain. The claimant noted that he was

>    jumped on by several children while in the pool (Exhibit lF/6). Radiographs of the lumbar spine indicated *mild* diffuse degenerative changes (Exhibit lF/5). However, the claimant's condition was described as *good* (Exhibit lF/8).

R. 16 (emphasis added).

In actuality, Plaintiff was also diagnosed at the same visit with cervical spondylolysis based on an x-ray showing "rather marked disc space narrowing at C3-4, C4-5, C5-6 levels and to a lesser degree at C6-7." R. 307. The oblique film showed encroachment on the intervetebral foramina on the right side primarily at C5-6 and on the left side at C3-4, C4-5 primarily. R. 307. The MRI of Plaintiff's cervical spine from treatment at the same hospital during a visit for similar complaints three months later, in August 2011, described *severe* multi-level degenerative changes resulting in severe central canal stenosis seen at C3-4, C4-5, C5-6; the most severe level is C4-5 and C5-6; cord compression cannot be excluded and clinical correlation is recommended; there is a left neural foraminal narrowing at C5-6. R. 305-06. For the ALJ to omit the preceding cervical spine records from the credibility discussion, and focus, instead, on the doctor's one-word description of Plaintiff's "condition" of "good" in the "departure" notes from the hospital, rather than the diagnoses/impression directly above it of "cervical radiculopathy, back strain, chronic back pain, and degenerative disc disease," (R. 312) illustrates how the ALJ strained to downplay certain information from the treatment notes to support her decision and wholly ignored other records that showed Plaintiff's condition was more serious.

Following the incident where he was "jumped on" or "tackled" in the pool in May 2011, and treated at Bert Fish Medical Center for cervical spine pain, Plaintiff was seen at the Neurology and Spine Disorders office of Dr. Grimes in January 2012. R. 382. Plaintiff's chief complaint was neck and bilateral arm pain, right greater than left, ongoing for 15 years. Dr. Grimes described Plaintiff's history of neck and arm pain:

-13-

> Patient relates a 15 year history of neck and bilateral arm pain. He describes a work-related injury he sustained some 15 years ago in a heavy sliding door fell down and struck him in the back of the head and neck. He had no fracture at that time and only a soft tissue muscle strain. He continued to work as a commercial electrician. He states over time he began to notice diffuse cervical pain and then pain radiating into his arms forearms and hands and all digits. He now notes that his pain is much worse [and] in his intense burning-like sensation to electric shock sensation that radiates into both arms both forearms and both hands when he turns his head to the right or left or especially when he looks upwards. He denies any motor weakness of his upper extremities. He states that over the last year he [has] not been able to work as of his diffuse neck pain and radicular symptoms. He denies any low back pain or lower extremity radicular symptoms. He denies any weakness of his upper extremities {or] loss of function. He has had recent cervical MRI that was done at Bert Fish Hospital in New Smyrna Beach, and demonstrates multilevel cervical spondylosis and at C3-4, C4-5, worse at C5-6 and C6-7 with central disc bulging and compression of the thecal sac at C5·6 end greater at C6-7. The films are of poor quality. In all planes cervical x-rays were noted or ever done. [sic] Otherwise the remainder of his neurological and musculoskeletal review of systems at this time is stable and unremarkable other than stated.

R. 382. On physical exam, Dr. Grimes noted:

> Examination of the cervical spine demonstrates limited range of motion in all planes. With hyperextension and foraminal closure testing this does reproduce cervical radiculopathy and paresthesias in both upper extremities. The patient demonstrates full range of motion of both shoulders no impingement or supraspinatus weakness is appreciated. No drop sign is seen. Motor strength in the upper extremities is intact at 5/5 all levels, no deltoid, tricep, or forearm, wrist or grip weakness is noted. No signs of myoatrophy or fasciculations are seen in the upper extremities.

R. 384. In contrast, Dr. Grimes noted – consistent with Plaintiff's reports to him – that Plaintiff had full range of motion in the lumbar spine with flexion and extension, mechanical signs were negative, and no significant spasms. R. 384. Dr. Grimes' plan was to order x-rays of the cervical spine and electrical studies of the upper extremities, as well as cervical epidural steroid injection, which could be beneficial in reducing some of his symptoms. R. 385. Dr. Grimes noted that Plaintiff "certainly warrants a neurosurgical evaluation unfortunately no neurosurgeons in this community participate with his insurance." R. 385. As Plaintiff testified at the hearing, no doctors who could provide such surgery took Medicaid in his county. R. 58.

Dr. Grimes ordered new MRIs of Plaintiff's cervical spine, which were taken in July 2012. The radiologist did not find quite the same "severe" level that the radiologist at Bert Fish Medical Center had, however, he did opine that the MRI's showed a significant impairment in that they showed moderate circumferential spinal stenosis at C3-4, C4-S, CS·6 and C6-7; moderate bilateral foraminal narrowing at C3-4, CS-6 and C6-7 with moderate left neural forarninal narrowing at C4-5; diffuse cervical spondylolysis Cl through C7; no acute fracture or prevertebral soft tissue swelling; and a tiny left paracentral disc bulge at C2-3 resulting in no significant cord impingement or neural foraminal narrowing. R. 407. In September 2012 when Plaintiff returned to Dr. Grimes' office for reevaluation, he noted Plaintiff had been "doing reasonably well as far as his chronic cervical stenosis and cervical upper extremity radiculopathy" which had seen "no significant progression." R. 397. Plaintiff received a right shoulder injection and an increase in his prescription for Neurontin. R. 400. The description of Plaintiff's physical exam of the cervical spine and upper extremities was the same as before: limited range of motion in all planes; with hyperextension and foraminal closure testing to the right, cervical radiculopathy and paresthesias in both upper extremities, and radicular symptoms radiating into the right upper extremity to about the mid forearm with numbness and paresthesias into the hand and all digits. R. 399. However, the exam in September 2011 demonstrated limited range of motion of the right shoulder with mild impairment and definite point tenderness over the bicipital tendon heads. R. 399.

Overall, the ALJ erred in downplaying the severity of the objective evidence of Plaintiff's *cervical* spine impairments, in mischaracterizing his activity in the pool as occurring *after* his injury (in August 2011) rather than at the time of the allege onset of symptoms (May 2011) and in relying on ambiguous or incorrect information that he was on a "roof" but fell only 3-4 feet. Moreover, much of the ALJ's credibility determination turned on Plaintiff's failure to obtain a surgical evaluation

when, as he testified, he could not find a surgeon who accepted Medicaid in his area, making surgery not a viable option.

In addition, in discounting Plaintiff's credibility, the ALJ found that Plaintiff's work history showed that he "worked only sporadically prior to the alleged disability onset date, which "raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments only." R. 19.  However, from 2005 until 2009 (when he was laid off) he was working consistently, with earnings between $10,964 and $22,905, before receiving unemployment benefits through the second quarter of 2011.  R. 32, 231.  According to the work background Plaintiff provided on the SSA form, he worked from November 1996 to February 2002 for Silvestri Investments, from September 2002 to November 2006 for All Florida Staffing, and from February 2007 to July 2009 for Rams/RPG[3].  R. 32-35, 296, 305.  For the reasons explained above, the ALJ erred in assessing Plaintiff's credibility.

The ALJ's error was compounded because she failed to properly consider Plaintiff's impairments in combination.  The ALJ, in determining whether a claimant's physical and mental impairments are sufficiently severe, must consider the *combined effect* of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having severe hypothetical and isolated illnesses.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled.  *Id.*, 985 F.2d at 534.

---

[3]Plaintiff also indicated that he had been accused or convicted of a felony or an attempt to commit a felony in the state of Florida.  R. 217.

-16-

As Plaintiff testified, he is unable to work on a full-time basis because he has a series of impairments from his neck downward along his right side. R. 35. He elaborated:

> I've got severe stenosis of the C-spine, which means there's almost zero fluid between the inside of the vertebrae and my spinal cord. My lower back is severely arthritic, as well as the heavy weight taking their tolls on my knees and, you know, and the power tools gave me carpal tunnel syndrome. . . . [M]y right side is just damaged beyond belief from carrying weight, doing commercial work and – The pinching of the nerves in my neck and lower back creates extreme pain. My right knee has got severe joint disease. My back has got severe disc disease . . . as well as the carpal tunnel in both my hands.

R. 35-36. Therefore, although Plaintiff's lumbar spine issues or his bilateral carpal tunnel syndrome were described as mild, the ALJ erred in failing to consider the combined effect of Plaintiff impairments.

### B. Hypothetical to the VE

Plaintiff also argues that the ALJ erred in relying on the testimony of the VE because the ALJ failed to include all of the Plaintiff's limitations. Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)). On remand, the ALJ will propose a hypothetical to the VE with the appropriate limitations and RFC based on the Record and consistent with the requirements set forth above.

## IV. CONCLUSION

For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **REVERSES** and **REMANDS** the

-17-

Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on May 14, 2015.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record